**Joseph G. Sansone**
**Chief, Market Abuse Unit**
**Simona K. Suh**
**Cynthia A. Matthews**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
New York Regional Office
100 Pearl Street, Suite 20-100
New York, New York 10004-2616
(212) 336-0132 (Matthews)
matthewsc@sec.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>                    Plaintiff,<br><br>   -against-<br><br>**FRANK B. GLASSNER,**<br><br>                    Defendant. | **COMPLAINT**<br><br>22 Civ. 4254 (    )<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against Defendant Frank B. Glassner ("Glassner" or "Defendant"), alleges as follows:

### SUMMARY

1. This case involves insider trading by Glassner, an executive compensation consultant, in the securities of biopharmaceutical company Kadmon Holdings, Inc. ("Kadmon"), in advance of Kadmon's September 8, 2021 announcement ("Announcement") that it had agreed to be acquired by the global biopharmaceutical company Sanofi S.A. ("Sanofi"). Glassner, a long-time consultant to Kadmon, learned of the acquisition negotiations in late July 2021, when a senior Kadmon executive (the "Kadmon Executive") reached out to him by phone to confirm that

Glassner and his executive compensation consulting firm ("Consulting Firm") would be available promptly to perform acquisition-related compensation analyses on an expedited basis.

2. Glassner's relationship with Kadmon was governed by a confidentiality agreement, and the Kadmon Executive additionally cautioned Glassner during the call that the information he shared about the potential acquisition was important and confidential.

3. Despite these obligations and warnings, within a half hour of his call with the Kadmon Executive, Glassner reactivated the login for his previously dormant online brokerage account and reset the account password. The very next trading day, August 2, 2021, Glassner deposited funds into that account and, while in possession and on the basis of material nonpublic information obtained from the Kadmon Executive, and in breach of his duties to Kadmon and its shareholders, began placing orders to purchase Kadmon stock.

4. Glassner continued to purchase Kadmon stock and call options on multiple additional days through August 23, 2021. During this time period, Glassner was working on acquisition-related executive compensation analyses for Kadmon and, in connection with this work, received from Kadmon, in confidence, additional material nonpublic information about various aspects of the negotiations that were relevant to his work, including the status of negotiation about the acquisition price.

5. At the time of the September 8, 2021 pre-market-open Announcement, Glassner held 28,445 shares of Kadmon stock and 910 Kadmon call option contracts.

6. Following the Announcement, Kadmon's stock price rose by approximately 71%, with resulting ill-gotten gains to Glassner of approximately $405,000.

## VIOLATIONS

7. By virtue of the foregoing conduct and as alleged further herein, Defendant has violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C.

§§ 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

8. Unless Defendant is restrained and enjoined, he will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

9. The Commission brings this action pursuant to the authority conferred upon it by Exchange Act Sections 21(d) [15 U.S.C. § 78u(d)] and 21A(a) [15 U.S.C. § 78u-1(a)].

10. The Commission seeks a final judgment: (a) permanently enjoining Defendant from violating the federal securities laws and rules this Complaint alleges he has violated; (b) ordering Defendant to pay disgorgement and prejudgment interest pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)]; (c) ordering Defendant to pay civil money penalties pursuant to Exchange Act Section 21A(a) [15 U.S.C. § 78u-1(a)]; and (d) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to Exchange Act Section 27 [15 U.S.C. § 78aa].

12. Defendant, directly and indirectly, has made use of the means or instrumentalities of interstate commerce or of the mails or of the facilities or a national securities exchange in connection with the transactions, acts, practices, and courses of business alleged herein.

13. Venue lies in this District under Exchange Act Section 27 [15 U.S.C. § 78aa]. Certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District. At all relevant times, Kadmon was headquartered in this District, and Kadmon's common stock traded on the NASDAQ Global Stock Market Exchange, which was headquartered in New York, New York.

**DEFENDANT**

14. **Glassner**, age 68, is a resident of Novato, California. He is the owner, Chairman, and Chief Executive Officer of the Consulting Firm.

**RELEVANT ENTITY**

15. **Kadmon**, now wholly-owned by Sanofi, at all relevant times was a Delaware corporation headquartered in New York, New York. Kadmon was a biopharmaceutical company that developed immuno-oncology therapies, as well as treatments for immune and fibrotic diseases, among other things. Prior to the closing of Sanofi's acquisition in November 2021, Kadmon's common stock was registered with the Commission pursuant to Section 12(g) of the Exchange Act and listed on the NASDAQ Global Select Market Exchange under the symbol KDMN.

16. **Sanofi** is a limited liability company incorporated in France and headquartered in Paris, France. Sanofi is a global biopharmaceutical company and at all relevant times its securities were listed on Euronext Paris, France, and in the U.S. on the Nasdaq Global Select Market Exchange.

**FACTS**

**I. GLASSNER'S RELATIONSHIP WITH KADMON**

17. From at least February 2015 through at least late August 2021, Glassner, through the Consulting Firm, provided Kadmon with executive compensation consulting services.

18. These services included annual executive compensation analysis, as well as peer comparisons and compensation recommendations in the event of material changes in company or employee circumstances, such as a severance, relocation, merger, or acquisition.

19. In connection with his engagement by Kadmon, Glassner at various times received from Kadmon material nonpublic information in order to perform these services.

20. In connection with Kadmon's engagement of the Consulting Firm in 2015, Glassner

4

signed a confidentiality agreement that prohibited the unauthorized use by the firm and its employees, including Glassner, of any Kadmon "Proprietary Information," defined as "all information … disclosed" by Kadmon to the firm, including all "confidential information."

## II.     GLASSNER'S INSIDER TRADING AHEAD OF THE ANNOUNCEMENT

21.     During the second half of July of 2021, representatives of Kadmon and Sanofi were engaged in confidential negotiations of a potential acquisition of Kadmon by Sanofi.

22.     By July 30, 2021, the discussions between Kadmon and Sanofi had advanced to the point where Kadmon's leadership believed that it would soon need Glassner's firm to quickly perform an acquisition-related executive compensation analysis.

23.     Accordingly, on or about July 30, 2021, the Kadmon Executive contacted Glassner by phone and told Glassner, in confidence, that Kadmon was in serious acquisition discussions. The Kadmon Executive then asked Glassner to confirm his and his firm's availability to perform the acquisition-related work soon and on an expedited basis.

24.     The Kadmon Executive expressly cautioned Glassner that the conveyed information about the negotiations was important and confidential.

25.     Approximately 30 minutes later, Glassner retrieved the login information for his online brokerage account, reset his password, and logged into the account.

26.     Glassner had not traded securities in this brokerage account in over three years, during which time the account held a balance of less than $400.

27.     The next business day, August 2, 2021, after the market close, Glassner transferred $100,000 to the account and placed an order to purchase 23,000 shares of Kadmon stock. The order was executed the following morning, August 3, 2021.

28.     Later on August 3, 2021, Glassner deposited an additional $20,000 into the account and placed orders to purchase an additional 4,950 shares of Kadmon stock. All of the orders

executed by the following day, August 4, 2021.

29. On August 4, 2021, Sanofi made a non-binding indication of interest to acquire all Kadmon common stock for $7.00 per share. Glassner was apprised about the offer price on or about that date, as the information was relevant to the acquisition-related compensation analysis his firm was to prepare for Kadmon.

30. Between August 4 and August 5, 2021, Glassner purchased another 300 shares of Kadmon stock.

31. On August 6, 2021, Glassner was introduced, via email, to Kadmon's outside counsel on the acquisition deal. Approximately 20 minutes later, Glassner placed an order to purchase 60 Kadmon call option contracts, executed that day.

32. Glassner continued to purchase Kadmon stock and call options on multiple subsequent days through August 23, 2021 as follows:

- August 9:   170 call option contracts
- August 12:  5 call option contracts
            15 shares of stock
- August 16:  80 call option contracts
- August 17:  100 call option contracts
            180 shares of stock
- August 18:  100 call option contracts
- August 19:  175 call option contracts
- August 20:  10 call option contracts
- August 23:  210 call option contracts

33. By August 23, 2021, Glassner had acquired a total of 28,445 shares of Kadmon stock

and 910 Kadmon call option contracts.

34. During this time period, Glassner and his firm were working on the acquisition-related compensation analysis.

35. In connection with this engagement, Glassner was apprised, in confidence, of the key developments in the negotiations that were relevant to the analysis, including updates on negotiations over the acquisition price.

36. In response to an email from the Kadmon Executive about the acquisition-related compensation project, on or about August 12, 2021, Glassner asked for the code name for the project, stating that, with a code name, "we'd . . . feel much more comfortable re: confidentiality, etc."

37. Under the terms that governed his and his firm's relationship with Kadmon, Glassner owed Kadmon and its shareholders a duty of trust and confidence. Glassner was obligated to maintain the confidentiality of the nonpublic information about Kadmon's acquisition negotiations that he learned in connection with his engagement by Kadmon and to refrain from trading on the basis of that information.

38. Glassner purchased Kadmon stock and call options between August 2 and 23, 2021, as alleged above, while in possession of, and on the basis of, material nonpublic information about Kadmon's impending acquisition by Sanofi.

39. Glassner knew or recklessly disregarded that the information he possessed when he made these purchases of Kadmon stock and options was material and nonpublic.

40. Glassner knew or recklessly disregarded that, by purchasing Kadmon stock and options between August 2 and 23, 2021, as alleged above, he breached his duties to Kadmon and its shareholders.

**III.     THE ANNOUNCEMENT AND GLASSNER'S ILL-GOTTEN GAINS**

41.     On September 8, 2021, before market open, Kadmon announced that it had reached a definitive merger agreement with Sanofi, under which Sanofi would acquire Kadmon for $9.50 per share.  Kadmon's stock price closed at $9.07 per share that day, rising by approximately 71% from the previous day's close of $5.30 per share.

42.     Glassner exercised some of his Kadmon call options and sold some of his Kadmon stock that afternoon. By the end of the day, he had reaped total realized and unrealized ill-gotten gains of approximately $405,000.

## CLAIM FOR RELIEF

**Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder**

43.     The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 42.

44.     Defendant, directly or indirectly, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly has (i) employed one or more devices, schemes, or artifices to defraud, (ii) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

45.     By reason of the foregoing, Defendant, directly or indirectly, has violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

**I.**

Permanently enjoining Defendant and his agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

**II.**

Ordering Defendant to disgorge all ill-gotten gains he received as a result of the alleged violations with prejudgment interest thereon pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)];

**III.**

Ordering Defendant to pay civil monetary penalties pursuant to Exchange Act Section 21A(a) [15 U.S.C. § 78u-1(a)];

**IV.**

Granting any other and further relief this Court may deem just and proper.

Dated: New York, New York
May 24, 2022

                                          s/Cynthia A. Matthews
                                          Cynthia A. Matthews
                                          Joseph G. Sansone
                                          Simona K. Suh
                                          Attorneys for Plaintiff
                                          SECURITIES AND EXCHANGE COMMISSION
                                          New York Regional Office
                                          100 Pearl Street, Suite 20-100
                                          New York, NY  10004-2616
                                          (212) 336-0132 (Matthews)
                                          matthewsc@sec.gov